Next case for argument, case number 22-2918 and case number 23-1154, both from the Western District of Arkansas. Arkansas United et al. v. John Thurston et al. Miss Pedersen Good morning and may it please the court. This court should reverse the district court and it can do so on several grounds. First, plaintiffs have no cause of action, which this court's decision in Arkansas State Conference NAACP v. Arkansas Board of Apportionment makes abundantly clear. In that case, this court held that Section 3 of the Voting Rights Act does not create a cause of action, but rather sets rules for lawsuits that are authorized by other provisions, such as Section 12, which authorizes Attorney General instituted actions, and Section 1983. But here, plaintiffs relied on Section 3 as their cause of action for their claims that Arkansas' six-voter assistance provision violates Section 208 of the Voting Rights Act and is preempted. And the district court agreed with plaintiffs, concluding they had a cause of action based on Section 3's aggrieved person language. But there is no cause of action under Section 3 as Arkansas State Conference held. So that means plaintiffs lack a cause of action and their entire suit can be dismissed before reaching the merits. Second, plaintiffs lose on the merits. Arkansas' six-voter assistance provision does not violate Section 208, nor is it preempted by Section 208. Arkansas' provision helps ensure that voters who require assistance to vote retain some privacy in their vote and are able to cast their ballot without undue influence, intimidation, or fraud affecting their ability to vote. And third, the district court erred by awarding attorneys' fees, any attorneys' fees, much less the excessive award here. So this court should reverse the district court, and it can do so across the board. Now I'll elaborate a bit more on why plaintiffs have no cause of action. Everyone agrees that Section 208 itself does not create a cause of action for plaintiffs' claims. That is why plaintiffs had to look elsewhere. And throughout this litigation, they have consistently pointed to Section 3 as the source of their private right of action. But as I've just explained, that argument is squarely foreclosed by Arkansas State Conference. That's why now, before this court, plaintiffs pivot to suggesting that the district court held they have a constitutional cause of action under the Supremacy Clause. But that argument is squarely foreclosed by the Supreme Court's 2015 decision in Armstrong v. Exceptional Child Care Center. In that case, the Supreme Court explained that, quote, the Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action. It instructs courts what to do when state and federal laws clash, but is silent regarding who may enforce federal laws in court and in what circumstances they may do so. Accordingly, plaintiffs have asserted no valid cause of action here, and their entire suit fails. Now, if this court were inclined to reach the merits, plaintiffs also lose on the merits. Section 208 does not, sorry, Arkansas 6 Voter Assistance Provision does not violate Section 208, and it is not preempted by that statute. Now, to conduct this analysis, the court must first determine the scope and meaning of Section 208. Section 208 provides, any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer, or officer or agent of the voter's union. This means that voters have the right to choose someone to assist them, that they can bring someone to the polls who they trust, rather than being forced to rely on someone who is not their choice, who they might not trust, and who might subject them to undue coercion or influence. But Section 208 does not give the voter the right to choose anyone without limitation. Indeed, it provides some examples of limitations on who may provide assistance. That may not have been prohibited at the time Section 208 was enacted under preexisting state laws. It says that a voter cannot choose an employer or union officer. You're going awfully fast for me. I'm sorry, Your Honor. I'll try to slow down. The point is that there can be limitations on who can provide assistance under the plaintext of Section 208. And even plaintiffs in the district court concede that there can be limitations on who can provide assistance outside of those limitations in Section 208. They admit that voters cannot choose to have an incarcerated individual assist them. There can be limitations on the universe of people who can provide assistance. Ms. Patterson, let's go back for just a second to the question of whether there's a cause of action. The amicus, the United States here, argues that they can bring this under Ex parte Young. What's your response to that? A few responses. First, plaintiffs have forfeited any argument on that basis. They've never claimed that they could bring a cause of action under Ex parte Young or an equitable cause of action. Ex parte Young actually does not create a cause of action. It only waives immunity for a cause of action that exists. So first, the response would be that that argument is forfeited. And it's clear that plaintiffs have not asserted an equitable cause of action under Ex parte Young through their actions in this case. Not only have they not argued it before this court or before the district court, but they have even filed a joint motion to hold this case in abeyance pending the court's decision in Arkansas State Conference saying that the issue in this case is whether there is a cause of action under the Voting Rights Act. And now they have sought to seek an indicative ruling from the district court asking that the district court would allow them to amend their complaint to assert a Section 1983 cause of action. That also indicates that they don't believe and have never argued that they have an equitable cause of action. And so it would be improper for this court to kind of make that case for them when they have never asserted for themselves on the basis of an amicus brief. Amicus briefs usually are not able to expand the scope of a court's review. And we haven't had a chance to fully respond to those arguments. And this court doesn't have the benefit of the district court's ruling on that issue. Counsel, you mentioned the pending motion for leave to amend. And I wanted to ask you about the relief that you're requesting in this case. You're asking that we reverse the grant of summary judgment to United. Are you also asking that we reverse the denial of summary judgment to the State? Yes, Your Honor, we are. The case should be dismissed because they do not have a valid cause of action, which means this case cannot proceed. Turning back to the merits, the interpretation that Section 208 does not give voters an absolute and virtually unbounded right to choose any assister is evident from the plain text, context, and the legislative history. First, Section 208 says, may be given assistance by a person of the voter's choice. Not any person that the voter chooses. Not the person. Several courts have recognized that the Congress' use of the indefinite article, a before person, indicates an undetermined amount of choice. Not an expansive, unlimited choice like any. And this is also consistent with how other federal rights regarding choice are interpreted. For example, there's a federal right to have a counsel of a person's choice, but that has not been interpreted as preempting the State's ability to limit who can represent parties through State licensing rules, through ethical rules, and things of that nature. The same is true here. Second, there's a historical background and regulatory context of Section 208 that indicates it does not preclude additional limitations on who can provide assistance. Elections are an area of traditional State authority. The default is that States are the ones regulating in this area under the Elections Clause, and it's an area with overlapping federal and State duties. So Congress knows that it would have had to be manifestly clear if it was intending to preempt State regulations in this space. And that is especially true here, considering the historical backdrop of Section 208, because States were already regulating in this space. Some States had already been giving voters the right to assistance and imposing limitations on that assistance when Section 208 was enacted. For example, back in 1889, Minnesota was allowing voters to receive assistance, but not allowing an assister to assist more than six people in one election. And you can see this in a case that plaintiffs cite, DSCC v. Simon, from the Minnesota Supreme Court. And Congress knew courts were regulating in this space, as the Senate Port reflects. They said many States are already providing assistance by a person of the voter's choice. So add that on top of the normal presumption that Congress is regulating knowing the laws are in effect. Did that Minnesota case predate the Voting Rights Act, or was it subsequent? The State law that you said prohibited more than six people from assisting, was that predating the Voting Rights Act? Yes, Your Honor. It was from 1889, and it was a 2020 case describing it. Third, legislative history buttresses this plain text and contextual meaning that Section 208 gives voters a right to choose an assister, but that right to choose is not unlimited and absolute. It indicates that Congress understood and intended States to continue to regulate in this space. And you can see this at Senate Report on page 241, where it says State provisions would be preempted, only to the extent that they unduly burden the right recognized in the section. It is therefore unsurprising that multiple courts have interpreted Section 208 as not precluding all efforts by the State to regulate elections by limiting the available choices. Those cases include an Eastern District of Michigan case, Priorities USA v. Nessel, an Illinois Appellate Court case, Quackenbush v. Skubas, and the Eastern District of Texas case, Ray v. Texas from the Eastern District of Texas. Plaintiff-sided cases fail to rebut the reasoning of these cases. You keep talking faster than I can listen. I'm sorry, Your Honor. That's a fundamental problem.  It's your audience that matters. I understand, Your Honor. I will say before reserving the rest of my time for rebuttal that two plaintiff-sided cases, U.S. v. Berks County and Nix v. Bethel, are not actually about a specific State law limitation on the universe of assisters, but rather in those situations, it was poll officials telling people that they could not bring assisters back with them. It's not the issue that's before this Court. In OCA Greater Houston v. Texas, it was not about what the phrase given assistance by a person of the voter's choice meant. Instead, there, it was about what vote means and whether Section 208 applies just within the ballot box or outside the ballot box. That is also not on point. If there's no further questions, I will reserve the remainder of my time for rebuttal. Thank you. Ms. Vargas? Good morning, and may it please the Court. I am Susana Sandoval Vargas, and I represent plaintiffs of police, Arkansas United, and El Mireo Wright. This is a case about voters who need and are entitled to assistance to vote, but may be denied that assistance because of Arkansas's arbitrary six-voter limit that imposes criminal penalties on individuals that provide that assistance. This is a straightforward preemption case. The Arkansas six-voter limit impermissibly narrows a right guaranteed under Section 208 of the Federal Voting Rights Act. The District Court applied well-established preemption doctrine and properly held that Arkansas's restriction on voter assistance conflicts with and is thus preempted by Section 208. The Arkansas six-voter limit prevents a voter from choosing and receiving help from an assister who has already helped six other voters in an election, when no such restriction exists under Section 208. And nothing in the text invites the State to add categories of prohibited assisters beyond those enumerated by Congress in the statute. The State tries to avoid this conflict between Section 208 and the Arkansas six-voter limit and asks this Court be resolved under one case, Arkansas State Conference, NAACP versus Arkansas Board of Apportionment. But Arkansas State Conference does not resolve this case because it does not speak to plaintiff's ability to sue under the Supremacy Clause. And here, the District Court also adjudicated and rendered judgment on plaintiff's Supremacy Clause claim. If you do concede that Arkansas State Conference prevents a clause under Section 3? Your Honor, plaintiffs maintain that Section 208 is privately enforceable, but we recognize that Arkansas State Conference held that Section 3 does not provide a private right of action. So the best path forward here is under plaintiff's Supremacy Clause, which is the path that the District Court took. All right. What about the Armstrong versus Exceptional Child Care Center? Yes, Your Honor. What the Supreme Court held in Armstrong is that the ability to bring these suits does not rest on any implied right of action, but rather on a judge-made equitable remedy. And Ex parte Young provided the District Court with the power to hear plaintiffs' requests to enjoin the State law. Ex parte Young provides persons subject to criminal penalties under State law the ability to maintain suit in equity for injunctive relief against State officers who act contrary to Federal law. Okay. Ms. Patterson, when I asked about Ex parte Young, Ms. Patterson said that you've never relied on that, and it was only raised by the amicus. Is that right? Your Honor, the District Court explicitly said and stated, plaintiffs may sue under Ex parte Young, and officer suits pursuant to Ex parte Young are appropriate method of enforcing the VRA. And rejecting the State's arguments that this suit was barred under sovereign immunity. So plaintiffs did argue Ex parte Young in arguing against that this lawsuit was barred by sovereign immunity. Plaintiff's remedy for injunctive relief here is rooted in equity. And in cases of equity such as this one. I thought Armstrong talked about the difference between an equitable rule of a cause of action versus an equitable rule of decision. In Ex parte Young, I thought the Court almost held, if not clearly implied, that Ex parte Young was a rule of decision, not a cause of action. Your Honor, what Armstrong held is that under the Supremacy Clause, the Supremacy Clause itself is a rule of decision. But the Supreme Court also recognized that it has long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating or planning to violate federal law. Armstrong held that the ability to bring these suits relies on a judge-made equitable remedy. And Ex parte Young provided the district court with the power to hear plaintiffs' requests and join the state law. But providing a remedy when there's already a cause of action is different than providing the cause of action itself. Your Honor, in Armstrong, the Supreme Court explained that in cases of equity such as the one before this Court, the question is not whether there was a private cause of action, but rather whether Congress explicitly or implicitly foreclosed such equitable relief. And here, Congress has done no such thing. The Voting Rights Act text and structure make clear that Congress intended private enforcement of the Voting Rights Act provisions, including Section 208. Additionally, the ability to enforce Section 208 through 1983 further supports Congress did not intend to foreclose equitable relief. Congress has had the opportunity to amend the Voting Rights Act to stop state laws from being preempted, but Congress has not done so here. Arkansas State Conference does not foreclose plaintiff's constitutional claim because it does not speak to plaintiff's ability to sue under the Supremacy Clause or to sue under Ex parte Young. Further, the state has waived any argument that the district court incorrectly reached plaintiff's claims under the Supremacy Clause because it did not raise this issue before the district court or on appeal in its opening brief. Arkansas State Conference does not require reversal of the district court's decision. The district court properly held that plaintiffs may sue under Ex parte Young and reach plaintiff's Supremacy Clause claim. Turning to the merits of this case, the district court properly resolved plaintiff's Supremacy Clause with a straightforward preemption analysis. Conflict preemption exists where a party's compliance with both federal and state law would be impossible or where state law would pose an obstacle to the accomplishment of Congress' objectives. Section 208 permits voters to be given assistance by a person of the voter's choice, with only two exceptions enumerated in the statute. Arkansas' six-voter limit adds to Section 208 a new class of prohibited assisters, making it impossible for a voter to receive assistance from his or her own chosen assister when that assister has already helped six other voters in an election. The state's additional restrictions on whom Congress permits to provide voter assistance frustrates and stands as an obstacle to Congress' purpose to ensure that voters with disability and voters with an inability to read or write receive assistance to vote. Congress has carefully limited the universe of assisters in Section 208, and nothing in the text invites the states to add categories of prohibited voters' assisters. Generally, where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied. The Supreme Court has repeatedly cautioned against creating right-limiting exceptions beyond the ones created by Congress. So Section 208 should not be read to imply restrictions beyond those enumerated. The District Court's preemption ruling is consistent with other federal courts' decisions, including OCA-Greater Houston v. Texas, where the Fifth Circuit invalidated a state law that, like the Arkansas six-voter limit, limited the category of voters. Finally, the District Court properly rejected the state's proposed balancing test in which state interest in election integrity outweighs the preemptive force of federal legislation. The state has not cited any authority that carves out an exception to the Supremacy Clause when a state law has a compelling interest in enacting statute that conflicts with federal law. The state argument is foreclosed by Arizona v. Intertribal Council of Arizona, where the Supreme Court, in holding that a state election law was preempted, said, A state's role in regulating congressional elections, while weighty and worthy of respect, has always existed subject to the express qualifications that it terminates according to federal law. The state has also failed to demonstrate a nexus between the arbitrary six-voter limit and the prevention of voter fraud. There is no evidence that placing an arbitrary limit on the number of voters a person can assist during an election protects voters from undue influence. There is also no evidence in the record that explains why helping six voters instead of seven voters protects against undue influence. What the record does show is that the local election officials and state officials testified that there are few to no instances of voter fraud in their counties or reported to the state. And those cannot recall any voter assistance. So can a state exercising its primary authority over elections, election and election laws, limit or require licensing or otherwise limit or even prohibit professional creation of businesses to get voters to the polls, whatever, assist? Your Honor, Congress Yes or no? Your Honor, I did not understand the question. Would you repeat it, please? Well, this is the people that are doing the six-person or more are people basically going into the business of this. Your Honor, there's no So can the state control that kind of business just like they can control other kinds of businesses that affect elections? No, Your Honor. Congress carefully limits No, what? No, they can't do that at all? No, there's no evidence of the record I grew up in Chicago. You're saying the state could not prohibit what routine went on in Chicago when I was a young boy in terms of not buying elections, buying people to get people to the polls and guaranteeing they'll vote right. That was a business. Your Honor, that's You're saying the Constitution prohibits that. Your Honor, two things here. The record does, those are not the facts before this case, but Section 2A They're lurking We recognize that Section 2A does not bar all state regulation, but it does bar the state from further limiting who can assist voters beyond what Congress enumerated. So it's what I'm talking about. Yes, Your Honor. So states can have laws that Where's the line? Congress drew that line, Your Honor. States can have laws that indirectly impact voter assistance of the assister, for example, in criminal laws that cause persons to be incarcerated. But that is the result of a practical unavailability of such an assister, and not the adoption of a state law that directly regulates voter assisters. Congress here has carefully limited the universe of assisters, and Congress has had the opportunity to amend Section 2A to add additional prohibited assisters, and has not done so. And generally where Congress explicitly enumerates certain So you won't attempt to give me how to draw the line between the obvious corruption that I'm talking about, but which occurred before the Voting Rights Act, so maybe that's why the Chicagoans until today were lucky. Your Honor, I recognize the issue that you're raising. In Tammany Hall, and going all up and down the East Coast, and Kansas City, Minneapolis, and St. Louis. Your Honor, that fact Embedded corruption. Your Honor, I recognize the fact pattern that you raise. However, those are not the facts before this court. So you won't help me draw a line. You know, we have to write precedent that might just have to deal with what I'm talking about. I understand, Your Honor. And Congress, in the legislative history, it shows that Congress contemplated how assistance is provided to voters may be regulated by the state. But Congress concluded that at the very least, each group of voters, voters with disabilities, and voters with an inability to read or write, are entitled to assistance from a person of their choice. So Congress has drawn that line, Your Honor. What's at issue here does not bar that. I suppose you could run around in a city of any size and find somebody who wouldn't get to do it quite the way they wanted to, following this restriction, as opposed to an unlimited, what you're talking about. But we're not talking about depriving people of access to the polls or the right to vote. We're talking about convenience versus whatever. No, Your Honor. We're talking about voters potentially being deprived of the right to vote because they cannot vote with the assister of their choice. Where in the record do I find that person here? Your Honor, the record shows that Arkansas United had to turn away member voters in anticipation that they... Is this a declaration or an affidavit or a deposition? Just give me a cite to what I go read. Yes, Your Honor. I don't have the cite directly in front of me. I would like to reference a declaration. Is it a declaration? Is it testimony? It is both declaration and testimony. Please just give me a name. Plaintiff Almedia Wright, Your Honor. Pardon? Plaintiff Almedia Wright. All right. There is both declaration and testimony from Ms. Wright. I see that my time is running out here. I would like to turn to the District Court's award of fees and costs under the Voting Rights Act fee-shifting provision. The District Court correctly awarded plaintiffs as prevailing parties an award for fees and costs. The State is precluded from challenging for the first time on appeal the statutory basis for the District Court's award. But even assuming the State's argument is properly before this Court, the Voting Rights Act fee-shifting provision and legislative history establish that a prevailing party in a voting rights litigation should recover fees. Both the text and placement that the Voting Rights Act fee-shifting provision applies suggest that the Voting Rights Act fee-shifting applies to Voting Rights Act claims and claims of voting rights preemption. Looking at the text of the fee-shifting provision, it allows for fees in any action proceeding to enforce the voting guarantees of the 14th and 15th Amendment. Turning to the legislative history of the fee-shifting provision, further makes clear Congress' intent to allow courts to award fees to prevailing parties. A House sponsor during floor debate on the fee-shifting provision explained, such litigation would include not only suits based directly on those amendments, but also cases based on statutes passed pursuant to them, such as 1971, 1973, and 1983. And courts have routinely awarded attorneys fees under the fee-shifting provision in Voting Rights Act cases, including Section 208 cases. Your Honors, I see that my time has run out. If there's no further questions, we ask that this Court affirm the District Court's decision, both on the merits, as well as on attorneys' award of plaintiffs' fees and costs. Thank you. Very good. Thank you. Hello. I'd like to start by providing you with a cite, Judge Loken, that I think she was looking for. It's Act 378, which is a declaration that only says that Ms. Reed had some concerns that Arkansas United may have had to turn away some voters who needed assistance. However, in her deposition, which is document 134-1 before the District Court, pages 45 to 46, she clarifies that she has no actual knowledge of any voter who did not receive assistance or who was not able to have the assister of their choice in voting. So I don't think that's an accurate representation of the record. That's also consistent with the testimony of the county election officials at Apps 342 and 337 that say they are unaware of anyone being denied assistance in voting who needed it. For this law, that has been in effect since 2009. I would like to respond to a few other things she said. First, below, plaintiffs argued Ex parte Young only as an exception to overcome sovereign immunity, not as a cause of action, and that's how the District Court addressed it. It even put it under the heading of saying sovereign immunity does not bar plaintiff's suit. That's at App 523. So defendants do not have an obligation to address a holding that does not exist. Second of all, the arguments are not forfeited, because plaintiffs' Voting Rights Act and Supremacy Clause claims are really two sides of the same coin. They both rested on Section 3 of the Voting Rights Act for the cause of action, and they both argue that Arkansas' law was inconsistent with Section 208. And the opening brief addressed both of those arguments that goes to both of those claims that are best understood together. Finally, plaintiffs say that typically statutory exceptions are read to be the only exceptions. Now, while that is true to some extent in reading a federal statute that lists certain exceptions, courts often interpret that as those being the exceptions in that source of law. But that does not mean that there are not other exceptions in other provisions from other sources of authority. Laws have to be read as a whole in context with other provisions at place. And as explained, plaintiffs even concede that there are some additional limitations on who can provide assistance outside of Section 208. If the Court has no further questions, I ask that you reverse the District Court. Thank you. Very good. Thank you. Well, it's a complicated issue. I suppose only in some respects is the case thus far complicated, but certainly the issues are complicated and the argument has been helpful and well-briefed. Thank you both for that. We'll take it under advisement.